# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
Filed: May 17, 2017

```
* * * * * * * * * * * * *    *
CHERI SROUR,                 *
                             *      PUBLISHED
                             *
          Petitioner,        *      No. 14-283V
                             *
v.                           *      Special Master Gowen
                             *
SECRETARY OF HEALTH          *      Attorneys' Fees and Costs; Entitlement to
AND HUMAN SERVICES,          *      Forum Rates; Adjustment of Attorneys' and
                             *      Paralegals' Rates; Reductions to Fees and
          Respondent.        *      Costs for Prior State Court Claim.
* * * * * * * * * * * * *    *
```

<u>Robert Joseph Tolchin</u>, Berkman Law Firm, LLC, Brooklyn, NY, for petitioner.
<u>Gordon Elliott Shemin</u>, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

On April 11, 2014, Cheri Srour ("petitioner") filed a petition pursuant to the National Vaccine Injury Compensation Program.[2] 42 U.S.C. §§ 300aa-1 to 34 (2012). Petitioner alleged that as a result of receiving an influenza ("flu") vaccine on October 17, 2007, she suffered a significant aggravation of a pre-existing Chronic Inflammatory Demyelinating Polyneuropathy ("CIDP") or Guillain-Barré Syndrome ("GBS"). On August 17, 2016, I issued a decision awarding compensation to petitioner based on the parties' stipulation. On March 10, 2017, petitioner filed a motion for attorneys' fees and costs. Petitioner's Motion. She requested attorneys' fees in the amount of $142,701.25 and attorneys' costs in the amount of $19,171.42, for a total attorneys' fees and costs request of $161,872.70. Petitioner's Motion at 5.

---

[1] Because this decision contains a reasoned explanation for my action in this case, I intend to post this ruling on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012)(Federal Management and Promotion of Electronic Government Services). As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b).

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-1 to 34 (2012) (Vaccine Act or the Act). All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C.A. § 300aa.

1

As discussed below, petitioner requested hourly rates higher than those found to be reasonable in McCulloch v. Sec'y of Health & Human Servs., No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). She also requested full reimbursement of the fees and costs related to a state court claim against the doctor and the physician group who allegedly administered the vaccine, which was eventually dismissed so that petitioner could file a claim in the Vaccine Program. As discussed below, I award $81,987.75 in attorneys' fees and $18,724.42 in attorneys' costs for a total attorneys' fees and costs award of $100,712.17.

## I.     Procedural History

### a.   State Court Claim

On April 15, 2010, petitioner filed a civil suit in state court against Hematology & Oncology Associates of Brooklyn, LLP and Joseph Lebowicz, M.D.[3] In the complaint, petitioner alleged that the defendants were jointly and severally liable for medical malpractice. Specifically, petitioner alleged that the defendants breached their standard of care by failing to collect petitioner's medical history and conduct an appropriate physical examination, and by administering medications, including the flu vaccine, which were contraindicated for a patient "with an abnormal immune system receiving IVIG treatments." Petitioner's Exhibit 18 at 5-6. Petitioner also claimed that they failed to obtain her informed consent for receiving the vaccine. Id. at 7.

As part of the civil case, petitioner's counsel obtained her extensive medical records, as well as relevant billing records and pharmaceutical records.[4] Depositions were also taken of petitioner, her mother, her father, defendant Joseph Lebowicz, M.D. (who supervised her IVIG treatments), and nurse Nina Kalinina (who administered the IVIG treatments and allegedly administered the flu vaccine as an employee of defendant Hematology & Oncology Associates of Brooklyn, LLP).[5] The defendants' medical records did not reflect that petitioner received a flu vaccine in conjunction with her IVIG treatment on October 17, 2007. See Petitioner's Exhibit 2 at 31, 38. However, "via depositions of the doctor and nurse, and thereafter obtaining the doctor's pharmaceutical billing records showing that the doctor's office had billed the petitioner's insurance for the flu shot, evidence was established that the petitioner did in fact

---

[3] Petitioner later filed a Vaccine Program claim. She filed the summons and the complaint for the civil suit as Exhibit 18.

[4] Petitioner also filed these records in support of her Vaccine Program claim. See Ex. 1 – Birth Certificate; Ex. 2 – Hematology & Oncology Associates chart (facility where flu shot administered); Ex. 3 – Maimonides Hospital March- November 2007; Ex. 4 – Mount Sinai Medical Center (November 2007); Ex. 5 – Cornell-NY Presbyterian Records; Ex. 6 – Columbia University Medical Records January 2008; Ex. 7 – Kingsbrook Jewish Medical Center; Ex. 8 – Dr. Ann Hanley Records.

[5] Petitioner also filed the deposition materials on the docket for her Vaccine Program claim. See Ex. 9 – Deposition of Cheri Srour (petitioner); Ex. 10 – Declaration of Cheri Srour; Ex. 11 – Deposition of Sara Srour (Cheri Srour's mother); Ex. 12 – Deposition of Marcel Srour (Cheri Srour's father); Ex. 13 – Deposition of Dr. Joseph Lebowicz (doctor from Hematology & Oncology Associates); Ex. 14 - Deposition of Nurse Nina Kalinina (nurse who administered flu vaccine).

receive the flu shot as she contended." Petitioner's Motion at 4.

Following the completion of discovery, the defendants filed a motion to dismiss the state court action to enable petitioner to file a claim in the Vaccine Program. Id.[6] On May 7, 2013, the defendants' motion to dismiss was granted, so that petitioner could file a claim in the Vaccine Program which was the appropriate forum for the claim. Petitioner's Exhibit 17. The state court's order specified that if the Vaccine Program declined jurisdiction, the state court case could be restored. Id.

### b.  Vaccine Claim

On April 11, 2014, petitioner filed a petition pursuant to the National Vaccine Injury Compensation Program. Petitioner alleged that as a result of receiving an influenza ("flu") vaccine on October 17, 2007, she suffered a "severe worsening or relapse of her neurological deficits consistent with acquired demyelinating sensorimotor polyneuropathy, classified as either "Chronic Inflammatory Demyelinating Polyneuropathy" ("CIDP") or Guillain-Barré Syndrome ("GBS"). Petition at 2. She filed two expert reports, prepared after the dismissal of the state court claim. Petitioner's Exhibits 15-16. I held an initial status conference on May 23, 2014. The parties agreed to explore informal resolution of the claim. On August 17, 2016, I issued a decision awarding compensation to petitioner based on the parties' stipulation. Judgment was entered on August 19, 2016. Under Vaccine Rule 13, petitioner's motion for attorneys' fees and costs was due 180 days after the entry of judgment, on February 15, 2017. On February 9, 2017, petitioner filed a motion for a thirty-day extension to file her motion for attorneys' fees and costs, which I granted.

On March 10, 2017, petitioner filed a motion for attorneys' fees and costs. Petitioner's Motion. Petitioner requests attorneys' fees in the amount of $142,701.25 and attorneys' costs in the amount of $19,171.42, for a total attorneys' fees and costs request of $161,872.70. Id. at 5. Petitioner also filed her signed statement that she did not incur any fees or costs related to the prosecution of this claim, pursuant to General Order #9.

On March 17, 2017, respondent filed a response to petitioner's motion. Respondent's Response. Respondent "respectfully recommend[ed] that the Special Master exercise his discretion and determine a reasonable award for attorneys' fees and costs." Id. at 2. Petitioner's motion for attorneys' fees and costs is now ripe for review.

## II.      Reasonable Attorneys' Fees

Under the Vaccine Act, a special master shall award reasonable attorneys' fees and costs for any petition that results in an award of compensation. § 300aa-15(e)(1). In the present case, petitioner was awarded substantial compensation pursuant to a joint stipulation. Therefore, petitioner is entitled to an award of reasonable fees and costs.

---

[6] Petitioner filed the order dismissing the state court claim as Exhibit 17 to the Vaccine Program claim.

The Vaccine Act permits an award of "reasonable" attorneys' fees and costs. § 300aa-15(e)(1). Congress did not expect legal fees and costs in the Vaccine Program to be high, "because of [its] no-fault nature…. its simplified procedures, and its elimination of the need to prove fault or causation in every case." Saxton v. Sec'y of Health and Human Servs., 3 F.3d 1517, 1520 (Fed. Cir. 1993) (quoting H.R. REP. NO. 99-908, at 36 reprinted in 1986 U.S.C.C.A.N. 6344, 6377). Special masters have "wide discretion in determining the reasonableness" of attorneys' fees and costs. See Perreira v. Sec'y of Health and Human Servs., 27 Fed. Cl. 29, 34 (1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994); see also Saxton, 3 F.3d at 1519 ("special masters are also entitled to use their prior experience in reviewing fee applications").

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1349 (Fed. Cir. 2008). Using the lodestar approach, a court determines the reasonable hourly rate, which is then applied to the number of hours reasonably expended on the litigation." Id. at 1347-58 (citing Blum v. Stenson, 465 U.S. 886, 888 (1984)). Then, the court may make an upward or downward departure from the initial calculation of the award based on other specific findings. Id. at 1348.

### a. Reasonable Hourly Rates

Petitioner seeks attorney's fees in the amount of $142,701.75, which reflects the following hourly rates for work performed from 2009 to 2016: $500.00 for Robert J. Tolchin and Marna Berkman; $475.00 for David Steigbigel; $375.00 for Aaron Solomon and Mark Salem; and $150.00 for paralegals Brian Young, Franca Talavera, and Cindy Strong. Petitioner's Motion, Exhibit A at 1. I find that these rates exceed the rates awarded for attorneys and paralegals in the Vaccine Program, and they shall be adjusted.

Under the Vaccine Act, a reasonable hourly rate is "the prevailing market rate defined as the rate prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Avera, 515 F.3d at 1347-48. In determining an award of attorneys' fees, a court should generally use the forum rate, i.e., the rate in the District of Columbia. Id. at 1348. However, an exception to the forum rule applies if an attorney performs a majority of the work on the vaccine claim outside of the forum and there is a "very significant" difference in compensation rates between the place where the work was performed and the forum. Id. at 1349 (citing Davis County v. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. United States Envtl. Prot. Agency, 169 F.3d 755, 758 (D.C. Cir. 1999)). The Federal Circuit has determined that the forum rate is effectively a ceiling. See Rodriguez v. Sec'y of Health & Human Servs., 632 F.3d 1381, 1385-86 (Fed. Cir. 2011).

I conducted a thorough analysis to determine appropriate hourly rates for forum work performed in the Vaccine Program. McCulloch v. Sec'y of Health & Human Servs., No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), motion for reconsideration denied, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015). After discussing the potential approaches to setting a forum rate and reviewing cases and material from both inside and outside of the Vaccine Program, I concluded that the following factors should be considered in determining an attorney's appropriate hourly rate: (1) the prevailing rate for comparable legal

work in Washington, D.C.; (2) the prevailing rate for cases in the Vaccine Program; (3) the experience of the attorney(s) in question within the Vaccine Program; (4) the overall legal experience of the attorney(s); (5) the quality of work performed by the attorney(s) in vaccine cases; and (6) the reputation of the attorney(s) in the legal community and the community at large. McCulloch, 2015 WL 5634323, at *17. In McCulloch, I found that the following hourly rate ranges were appropriate:

| Attorneys with: | |
| --- | --- |
| 20+ years of experience in practice | $350- $425 |
| 11-19 years of experience in practice | $300- $375 |
| 8-10 years of experience in practice | $275- $350 |
| 4-7 years of experience in practice | $225- $300 |
| Less than 4 years of experience in practice | $150- $225 |
| Paralegals | $125- $145 |

McCulloch has been endorsed by all current special masters. Additionally, it is the basis for the fee schedule which is published on the United States Court of Federal Claims' website as a resource for petitioners' counsel. See Office of Special Masters – Attorneys' Forum Hourly Rate Fee Schedules, available at http://www.uscfc.uscourts.gov/node/2914 (last accessed May 17, 2017).

Special masters have consistently found that it is appropriate to award forum rates to legal professionals practicing in the greater New York metropolitan area, which has a similar legal market, costs of living, and overhead costs as those in the Washington, D.C. forum area. See, e.g., Michel v. Secretary of Health Human Servs., No. 14-781V, 2016 WL 7574478 (Fed. Cl. Spec. Mstr. Nov. 28, 2016); Romig v. Sec'y of Health & Human Servs., No. 15-942V, 2016 WL 8378157 (Fed. Cl. Spec. Mstr. Nov. 15, 2016); Paterek v. Secretary of Health Human Servs., No. 2-411V, 2014 WL 3339503 (Fed. Cl. Spec. Mstr. June 12, 2014); DiMatteo v. Secretary of Health Human Servs., No. 10-566V, 2014 WL 1509320 (Fed. Cl. Spec. Mstr. Mar. 27, 2014).

Because petitioner's counsel are located in Brooklyn, New York, they are entitled to forum rates. I will award forum rates consistent with each individual's general legal experience and specific experience with the Vaccine Program.

### i. Robert Tolchin

Petitioner requests $500.00 per hour for work performed by her lead counsel, Robert Tolchin. Petitioner's Motion at 5. Mr. Tolchin states that this was his regular hourly rate during this time period. Id. However, this rate will not be awarded because it exceeds the McCulloch ranges applicable to Mr. Tolchin, based on his years of experience. (Indeed, it exceeds McCulloch's upper limit for any attorneys practicing in the Vaccine Program, even those with the most legal experience, specific knowledge of the Program, skills, and reputation.)

Mr. Tolchin's declaration states that he has been practicing law since 1992. Id. at 6. Therefore, based on his years of experience, the appropriate hourly rate for his work in the Vaccine Program is somewhere within the range of $300 - $375 for work performed from 2009 -

2011, and $350 - $425 for work performed from 2012 - 2016.  In determining the appropriate rates within these ranges, I recognize that Mr. Tolchin has expertise in certain areas of the law, including medical malpractice, and he appears to have a positive reputation.  However, this is Mr. Tolchin's and his colleagues' first case in the Vaccine Program.  Their unfamiliarity with the Vaccine Program is evidenced by the initial management of the case.  The first billing entry is from October 27, 2009, when Mr. Tolchin spent 2 hours on "intake."  Petitioner's Motion, Exhibit A at 1.  After one associate, Aaron Solomon recorded four hours to "research law and medicine" and another associate, Mark Salem, obtained various medical records, in April 2010, Mr. Tolchin "review[ed] medical records, law and medical research" and "draft[ed] summons and complaint."  Id. at 1-2.  These records reflect that Mr. Tolchin and the attorneys he supervised were not aware of the Vaccine Program, and despite their initial research, they decided to file a state court claim.  This claim was dismissed over three years later, in May 2013, when the state court recognized that the Vaccine Program was the sole appropriate forum for the claim.

Based on this course of action, while recognizing the excellent result ultimately obtained for his client, it is appropriate to award Mr. Tolchin $350.00 per hour for his work performed from 2009 - 2011, and $400.00 per hour for his work performed from 2012 -2016.

### ii.  Marna Berkman

Petitioner also requests $500.00 per hour for a limited amount of work done in 2011 by Marna Berkman.  Petitioner's Motion at 6.  According to Mr. Tolchin's declaration, Ms. Berkman has been practicing law since 1994.  Id.  Therefore, in 2011, she had 17 years of experience and could receive an hourly rate within the range of $300 - $375.

Like Mr. Tolchin, Ms. Berkman is admitted to the bars of several states and several federal courts, she has experience in other areas of the law, and she seems to have a generally positive reputation.  Id.  However, it does not appear that she had any previous exposure to the Vaccine Program.  I will award $350.00 per hour for her work.

### iii.  David Steigbigel

Petitioner requests that David Steigbigel, a senior associate at the firm, be compensated at a rate of $475.00 per hour.  Petitioner's Motion at 6.  This rate, as well, is inappropriately high.  Mr. Steigbigel began practicing law in 1992.  Id.  Therefore, the appropriate range for his work on the case in 2011 was between $300 - $375 per hour.  The range for his work from 2012 - 2016 was $350 - $425 per hour.

Mr. Steigbigel seems to have a positive reputation and expertise in other areas of the law, but no knowledge of the Vaccine Program when he began working on this case.  I will award Mr. Steigbigel $340.00 per hour for his work in 2011, and $390.00 per hour for his work in 2012 – 2016.

### iv.   Aaron Solomon

Petitioner requests an hourly rate of $375.00 for work performed by Aaron Solomon from 2009 to 2013.  Petitioner's Motion at 6.  According to Mr. Tolchin's declaration, Mr. Solomon began practicing law in 2010.  Id.  He was not admitted to practice law when he entered 4 hours of "research [on] law and medicine" on October 30, 2009.  Petitioner's Motion, Exhibit A at 1.  Therefore, he should not receive an attorney rate for this work.  I will award him $145.00 per hour for this entry in 2009.

Mr. Solomon did additional work on the case from 2010 to 2013.  Based on his years of general legal experience, the appropriate range for his work during this period is $150 – $225 an hour.  I recognize that during this period, Mr. Solomon was admitted to the bar, gained legal experience, and helped prepare for depositions and discovery that eventually led to a very sizeable settlement for petitioner in the Vaccine Program.  However, he was not initially familiar with the Vaccine Program and likely only became aware of it when the defendants in the state court claim filed their motion to dismiss.  Therefore, he should not receive a rate at the top of this range.  He will be awarded $175.00 per hour for his work from 2010 to 2013.

### v.   Mark Salem

Petitioner also requests $375.00 per hour for work performed by Mark Salem from 2009 to 2016.  Petitioner's Motion at 7.  Like the other rates requested, this rate exceeds what would be appropriate under McCulloch.

According to Mr. Tolchin's declaration, Mr. Salem began practicing law in 2009.  Petitioner's Motion at 7.  Therefore, his first work on the case in 2009 and 2010 should be compensated at a rate somewhere between $150 - $225 per hour.  This range is for attorneys with zero to four years of general legal experience.  Because Mr. Salem was in his first year of practice and he had no knowledge whatsoever of the Vaccine Program, I will award him $175.00 per hour for the work performed in 2009 and 2010.

Mr. Salem did additional work on the case in 2015 and 2016.  At this point, since Mr. Salem has 6-7 years of legal experience, the reasonable range for his work in the Vaccine Program was $225 - $300 per hour. This range is for attorneys with 4-7 years of experience.  Mr. Salem's experience was toward the upper end of this range, by which point, he had a better understanding of the Vaccine Program.  Therefore, I will award him $275.00 per hour for the work during this period.

### vi.   Paralegals

Petitioner requests her counsel's regular paralegal billing rate of $150.00 per hour, for "three experienced paralegals": Brian Young, Franca Talavera, and Cindy Strong.  Petitioner's Motion at 7.  This rate must also be adjusted.

The OSM forum rate schedule provides a range of $125.00 to $145.00 per hour for work performed by paralegals in 2016. This range recognizes that it is appropriate to pay more for work performed by paralegals with greater education and experience. Indeed, in McCulloch, I decided to award higher rates to each paralegal who was a "well-qualified, carefully chosen college graduate" with "several years at the firm doing exclusively vaccine work." McCulloch at *21. In the present case, Mr. Tolchin represented that his paralegals are "experienced." But neither Mr. Tolchin's declaration nor internet research revealed each paralegal's level of education or amount of experience. And it is unlikely that any paralegal had experience with the Vaccine Program, since this was the firm's first case. Accordingly, it is reasonable to award $125.00 per hour for the paralegals' work.

### b.  Reduction of Billable Hours

As noted above, the Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 300aa—15(e)(1). Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. See Savin v. Sec'y of Health & Human Servs., 85 Fed. Cl. 313, 316-18 (Fed. Cl. 2008). Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." Saxton, 3 F.3d at1521 (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." Id. at 1522. Furthermore, the special master may reduce a fee request *sua sponte*, apart from objections raised by respondent and without providing petitioners notice and opportunity to respond. See Sabella v. Sec'y of Health & Human Servs., 86 Fed. Cl. 201, 209 (Fed. Cl. 2009). A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. Broekelschen v. Sec'y of Health & Human Servs., 102 Fed. Cl. 719, 729 (Fed. Cl. 2011). Just as "[t]rial court courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests . . . [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications." Saxton, 3 F.3d at 1521 (citing Farrar v. Sec'y of Health & Human Servs., 1992 WL 336502 at *2-3 (Cl. Ct. Spec. Mstr. Nov. 2, 1992)).

In this case, petitioner is entitled to an award of attorneys' fees and costs, but I find that it is appropriate to reduce compensation for the hours expended on the state court claim.

### i.  Reduction for Work on the State Court Claim

Under the Vaccine Program, reasonable attorneys' fees and costs are limited to those "incurred in any proceeding on [a] petition." § 15(e)(1). Past decisions have denied compensation for fees and costs associated with pursuing civil claims outside of the Vaccine Program. See, e.g., Twerdok v. Sec'y of Health & Human Servs., No. 14-1237V, 2016 WL 7048036 (Fed. Cl. Spec. Mstr. Aug. 4, 2016) (denying compensation for research related to a civil suit against the pharmacy where the vaccine was administered); Krause v. Sec'y of Health & Human Servs., No. 01-93V, 2012 WL 4477431 (Fed. Cl. Spec. Mstr. June 20, 2012) (not reimbursing counsel for "research conducted to explore petitioner's civil remedies").

Petitioner's counsel entered a total of 324 hours in this case.[7]  Between October 2009 to May 2013, counsel entered 168.95 hours for intake, initial research, and litigation of the state court claim against petitioner's medical providers.  Petitioner's Motion, Exhibit A at 1-4.  The bulk of these hours was spent on discovery – specifically preparation for and depositions of petitioner, her mother, her father, the doctor, and the nurse.  After the parties conducted full discovery, the state court granted the defendant's motion to dismiss on May 9, 2013, so that petitioner could bring a claim in the Vaccine Program.

Petitioner's counsel contend that they should be fully compensated for their work on the state court claim because they obtained information which contributed to petitioner eventually prevailing in the Vaccine Program.  Specifically, the medical records did not reflect that petitioner received the flu shot at issue.  Petitioner's Motion at 3-4.  Counsel argue that they resolved this issue through "full discovery," in particular, through depositions of the doctor and nurse and by obtaining billing records showing that the physician group had billed petitioner for the flu shot.  Id. at 4.  Counsel argue that "without this crucial evidence, petitioner would not have been able to proceed with a flu-shot-related claim in any forum."  Id.  Counsel also state that if the state court claim had not been filed, they "would have had to conduct the same discovery in the Vaccine Court to develop that evidence."  Id.  They also argue that the vaccine claim was "an extension of the state court case and could not have proceeded without the work product generated in state court, or duplication of that work product."  Id.  Lastly, counsel state that petitioner and respondent reached a joint stipulation after respondent reviewed the evidence obtained during the state court claim.  Id.

I agree that during litigation of the state court claim, counsel obtained certain evidence showing that petitioner received the flu shot at issue, which was critical to petitioner's successful result in the Vaccine Program.  However, counsel should not be fully compensated for their work on the state court claim, particularly the extensive discovery conducted.  They are not correct that they would have had to conduct "the same discovery" if they had initially filed in the Vaccine Program.  Petitioner's Motion at 4.  But they would have had to generate evidence of the vaccine, her condition before and after the vaccine, and her damages.  The work done to obtain records and develop the damages through the discovery process was undoubtedly helpful in coming to a good resolution of her claim in the Vaccine Program.

The Vaccine Act created a "less adversarial, expeditious, and informal proceeding for the resolution of petitions."  § 300aa-12(d)(2).  A claim should be supported by the injured person's affidavit and other documentation showing that he or she received a covered vaccination, suffered an injury meeting the Program's severity requirement, and is otherwise eligible for compensation.  § 300aa-11(c).  After a petition is filed, the special master reviews it and schedules further proceedings.  Rules of the United States Court of Federal Claims – Appendix B, Vaccine Rules – Title II (available at http://www.uscfc.uscourts.gov/sites/default/files/160801-Final-Version-of-Vaccine-Rules.pdf).

---

[7] Petitioner's motion for attorney's fees and costs and the motion's Exhibit A (a spreadsheet itemizing the hours of attorney and paralegal time spent on the case) provide a total of 321 hours.  Petitioner's Motion at 5; Petitioner's Motion, Exhibit A at 14.  However, this includes one entry for 3 hours by "DS/ RT" (presumably David Steigbigel and Robert Tolchin).  Petitioner's Motion, Exhibit A at 12.  When each individual is counted separately, the total comes to 324 hours.

The special master may order the production of any evidence, documents, and testimony that is "reasonable and necessary." § 300aa-12(3)(B). Moreover, there may be "no discovery in a proceeding on a petition other than the discovery required by the special master." Id.; see also Vaccine Rule 7 (providing that "there is no discovery as a matter of right" and "the informal and cooperative exchange of information is the ordinary and preferred practice").

If counsel had originally filed in the Vaccine Program, they would not have engaged in formal discovery and would not have had to expend as much time as they did in the adversarial state court claim. They still would have had to obtain petitioner's complete records. They also would have needed to establish that petitioner received the flu vaccine. The special master assigned to the case may have ordered limited discovery. For example, the special master may have ordered affidavits from petitioner and her parents regarding the administration of the vaccine. The special master may have also authorized subpoenas addressed to petitioner's medical providers and the insurance company which was billed for the vaccine, if those records were not voluntarily produced. The special master may also have required depositions or interrogatories of the medical providers if the fact of vaccination could not have been otherwise verified such as through the billing records. However, it would have been entirely unusual to conduct formal depositions of five individuals at the outset of a Vaccine Program claim, even to address an important factual dispute.[8]

Review of the depositions of petitioner and her parents shows that the depositions also provided some necessary support for petitioner's claim that the vaccine significantly aggravated her underlying condition. See Loving v. Sec'y of Health & Human Servs., 86 Fed. Cl. 135, 144 (2009) (setting forth a six-part test: (1) what was petitioner's condition prior to administration of the vaccine; (2) what was petitioner's condition after the vaccine; (3) whether the change constitutes a significant aggravation; (4) a medical theory of how the vaccine caused the significant aggravation; (5) a logical sequence of cause and effect between the vaccine and the significant aggravation; and (6) a proximate temporal relationship between the vaccination and the significant aggravation); see also W.C. v. Sec'y of Health & Human Servs., 704 F.3d 1352, 1357 (Fed. Cir. 2013) (holding that Loving "provides the correct framework for evaluating off-Table significant aggravation claims"). This evidence of petitioner's condition before and after the flu shot was likely necessary to persuade respondent to enter into settlement negotiations.

---

[8] Compare to Keaton v. Sec'y of Health & Human Servs., No. 12-444V, 2014 WL 3696349 (Fed. Cl. Spec. Mstr. July 2, 2014). The petitioner in Keaton also alleged injuries as a result of a flu vaccine. His petition was filed on July 17, 2012. The petitioner filed an affidavit and numerous records. On January 14, 2013, respondent filed a status report indicating that she did not believe the evidence filed to date was sufficient to establish that the petitioner received a covered vaccine. After the petitioner filed additional records, the special master conducted a fact hearing which consisted of testimony from petitioner and his wife to the effect that petitioner had received a flu vaccine and a non-covered pneumonia vaccine on the same day. Petitioner then filed additional medical records. Respondent still contended that there was insufficient proof of the alleged flu vaccine. The special master authorized several sets of interrogatories to the medical providers. Eventually, through production of the medical provider's vaccine log, it was shown that petitioner received the pneumonia vaccine, but not the flu vaccine. At that juncture, the special master previously assigned to the case retired, the case was reassigned to me, and I issued a ruling on the issue. This case illustrates that a special master actively manages the course of a vaccine claim and orders discovery as he or she finds to be necessary. The special master does, at times, order discovery on the issue of receipt of the vaccines when the medical records are not clear.

The depositions of petitioner and her parents also addressed petitioner's ongoing injuries and disabilities, which likely helped counsel obtain the very significant settlement award that they did.  Had counsel filed in the appropriate forum from the outset, they may have established this evidence through affidavits from petitioner and her parents, in conjunction with the medical records.  To the extent that the depositions substituted for the necessary affidavits or testimony at a hearing in the Vaccine Program, I will compensate for them in part.

I find that it is reasonable to award a portion of the hours expended on the state court claim because it helped to establish that petitioner received the vaccine.  It also provided substantial information about petitioner's condition before and after the vaccine, as well as her damages and disabilities claimed in the Vaccine Program.  However, the state court claim involved formal discovery and significant work that would not have occurred if counsel had originally filed in the Vaccine Program.  Of the 168.95 hours expended before the state court claim was dismissed, 84.475 hours (50%) will be awarded.

### ii.  Review of Hours Expended on the Vaccine Claim

After the state court claim was dismissed, between June 2013 to August 2016, counsel entered a further 155.05 hours to file and resolve petitioner's claim in the Vaccine Program.  Petitioner's Motion, Exhibit A at 4-14.  This work included filing the complaint and exhibits; obtaining additional medical records; communicating with petitioner and her parents; retaining several medical experts and an expert economist; communicating with the court; and reaching a settlement with respondent.  I find that these hours are reasonable and should be awarded in full.

### iii.  Calculation of Attorneys' Fees and Costs

Attorneys' fees and costs will be awarded as follows:

| | Rate Awarded | Hours Awarded | Total Awarded |
|---|---|---|---|
| **Robert Tolchin** | | | |
| 2009 | $350 | 1 | $350.00 |
| 2010 | $350 | 6.25 | $2,187.50 |
| 2012 | $400 | 0.5 | $200.00 |
| 2013 | $400 | 19.375 | $7,750.00 |
| 2014 | $400 | 24.75 | $9,900.00 |
| 2015 | $400 | 13 | $5,200.00 |
| 2016 | $400 | 16.5 | $6,600.00 |
| **Marna Berkman** | | | |
| 2011 | $350 | 4.5 | $1,575.00 |
| **David Steigbigel** | | | |
| 2011 | $340 | 19.625 | $6,672.50 |
| 2012 | $390 | 3.1 | $1,209.00 |
| 2013 | $390 | 6.375 | $2,486.25 |
| 2014 | $390 | 26 | $10,140.00 |
| 2015 | $390 | 23.75 | $9,262.50 |

| | | | |
|---|---|---|---|
| 2016 | $390 | 23 | $8,970.00 |
| **Aaron Solomon** | | | |
| 2009 | $145 | 2 | $290.00 |
| 2010 | $175 | 8.25 | $1,443.75 |
| 2011 | $175 | 8.75 | $1,531.25 |
| 2012 | $175 | 4.5 | $787.50 |
| 2013 | $175 | 3 | $525.00 |
| **Mark Salem** | | | |
| 2009 | $175 | 3 | $525.00 |
| 2010 | $175 | .25 | $43.75 |
| 2015 | $275 | 5 | $1,375.00 |
| 2016 | $275 | 5.55 | $1,526.25 |
| **Paralegals** | | | |
| 2010 | $125 | 2.5 | $312.50 |
| 2011 | $125 | 6 | $750.00 |
| 2012 | $125 | 0.5 | $62.50 |
| 2014 | $125 | 2.5 | $312.50 |
| **Total** | **N/A** | **239.525** | **$81,987.75** |

### c. Reasonable Attorneys' Costs

Like attorneys' fees, a request for reimbursement of costs must be reasonable.  Perreira , 27 Fed. Cl. at 34 (Fed. Cl. 1992).  Petitioner's counsel entered costs totaling $19,171.42. Petitioner's Motion, Exhibit B at 1.  These include $447.00 in costs for filing and service of process in the state court claim.  Id.  If counsel had correctly filed this case in the Vaccine Program, they would not have incurred these costs.  Therefore, counsel will not be reimbursed for these costs.

Counsel also requested reimbursement for the deposition transcripts of the doctor and nurse, but not for the transcripts of petitioner and her parents.  As discussed above, I am awarding counsel a portion of the fees associated with obtaining this evidence.  I find that awarding the costs of some, but not all, of the depositions accomplishes the same result. Therefore, the submitted costs for the depositions will be awarded.  The remaining costs are for obtaining medical records; copies; postage; filing the Vaccine Program claim; and retaining several medical experts and one expert economist.  Id. at 2-41.  These appear reasonable and shall be awarded.  Therefore, I award a total of $18,724.42 in attorneys' costs.

### III.     Conclusion

Based on all of the above, I find that petitioner is entitled to the following award of reasonable fees and costs:

**Attorneys' Fees Awarded**                    **$81,987.75**

**Attorneys' Costs Awarded**                    **$18,724.42**

**Total Attorneys' Fees and Costs Awarded**     **$100,712.17**

**Accordingly, I award the following:**

1) **A lump sum in the amount of $100,712.17, representing reimbursement for attorney's fees and costs, in the form of a check jointly payable to petitioner Ms. Cheri Srour and petitioner's counsel, Robert J. Tolchin of the Berkman Law Firm, LLC.**[9]

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance herewith.[10]

**IT IS SO ORDERED.**

**s/Thomas L. Gowen**
Thomas L. Gowen
Special Master

---

[9]  This amount is intended to cover all legal expenses incurred in this matter.  This award encompasses all charges by the attorney against a client, "advanced costs," and fees for legal services rendered. Furthermore, § 15(e)(3) prevents an attorney from charging or collecting fees (including costs that would be in addition to the amount awarded herein).  See generally Black v. Sec'y of Health & Human Servs., 924 F.3d 1029 (Fed. Cir. 1991).

[10] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of notice renouncing the right to seek review.